THIS DISPOSITION IS
CITABLE AS PRECEDENT OF
THE TTAB

Mailed: April 2, 2003
Paper No. 25
BAC

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re Software Publishers Association
_____

Serial No. 74/498,601
_____

Mark B. Harrison of Venable for Software Publishers Association.

Henry S. Zak, Trademark Examining Attorney, Law Office 108, (David Shallant, Managing Attorney).
_____

Before Hanak, Chapman and Bottorff, Administrative Trademark Judges.

Opinion by Chapman, Administrative Trademark Judge:

On March 9, 1994, Software Publishers Association filed an intent-to-use based application to register CERTIFIED SOFTWARE MANAGER on the Principal Register as a certification mark for "software asset and licensing management" in International Class B.  Applicant's certification statement reads as follows:  "The certification mark, as intended to be used by persons authorized by the certifier, will certify that said persons

have passed certifier's examination and have met certifier's standards for software asset and licensing management."[1]  The method-of-use clause originally read "the mark is intended to be used by applying it to advertisements, brochures, and indicia that certification has occurred."

In the first Office action, the Examining Attorney refused registration of the proposed mark as merely descriptive under Section 2(e)(1) of the Trademark Act, 15 U.S.C. §1052(e)(1), and as being merely a title or degree and not functioning as a certification mark under Sections 4 and 45 of the Trademark Act, 15 U.S.C. §§1054 and 1127, and, inter alia, required that applicant state it will not use the certification mark as a service mark as required by Section 4, 15 U.S.C. §1054, and Trademark Rule 2.45.  The Examining Attorney made of record the Webster's II New Riverside University Dictionary (1984) definition of "certify" as "v. –fied, -fying, -fies. ... 1.a. To confirm formally as true, accurate, or genuine, esp. in writing. b. To guarantee as meeting a standard. ... 5. To issue a

---

[1] The original application certification statement was amended to use the words "certifier" and "certifier's" in place of the words "applicant" and "applicant's."  It is noted that if applicant ultimately prevails, then the application must be remanded to the Examining Attorney to seek an amendment to the certification statement reflecting use rather than intent to use.

license or certificate to." He also made of record printouts of several excerpted stories retrieved from the Nexis database to show that the term "software manager" is commonly used to refer to someone who manages the use of software for a company. (For example, "Software managers must be conversant in current technology and technology trends, but to deliver software profitably, they must be skilled managers first." Computerworld, June 21, 1993; and "Few experienced corporate software managers will bet their schedule and jobs on timely software releases." InformationWeek, July 25, 1994.) Applicant responded thereto, arguing, inter alia, that the mark is not merely descriptive; that there is no evidence of use of the words CERTIFIED SOFTWARE MANAGER together (except by applicant), and that the mark functions as a certification mark.

The Examining Attorney then issued a Final Office action on the two refusals and the requirement, and advised applicant regarding its co-pending application Serial No. 74/498,699 (for the same mark for various educational and testing services in International Class 41) that the United States Patent and Trademark Office (USPTO or Office) will not register the same mark as both a service mark and a certification mark. The Examining Attorney included therewith dictionary definitions of the terms "software"

and "manager," and printouts of several additional stories retrieved from the Nexis database.

Proceedings were then suspended by the Examining Attorney pending the registration or abandonment of applicant's co-pending application Serial No. 74/498,699 for the same mark for services in International Class 41. On August 17, 1998, the Examining Attorney resumed prosecution of this application as the prior application for services was abandoned in December 1997.

On February 17, 1999 applicant filed an amendment to allege use and an amendment of the application to one seeking registration on the Supplemental Register.[2] Applicant's amendment to allege use under Trademark Rule 2.76 includes (i) three specimens, all being photocopies of a certificate, (ii) a claimed date of first use and first use in commerce of May 1994, and (iii) an amended method-of-use clause which now reads: "The mark is used by applying it to certificates, decals and related materials."

Applicant's specimen of record is reproduced below in reduced form.

---

[2] Because of applicant's amendment to the Supplemental Register, the effective filing date of this application becomes the date applicant amended to the Supplemental Register after filing an acceptable amendment to allege use. The effective filing date of this application is now February 17, 1999. See TMEP §815.02 (Third Edition 2002).

4



In an October 9, 1999 Office action, the Examining Attorney stated that the prior filed co-pending application for services, having been abandoned, was no longer a potential problem with respect to registration of the instant application for a certification mark, and refused registration on the Supplemental Register because the proposed mark (i) "merely designates a title or degree and does not function as a certification mark" under Sections 4 and 45 of the Trademark Act, and (ii) "is incapable of identifying the applicant's [certification] services and

distinguishing them from those of others" under Section 23 of the Trademark Act.[3]

The Examining Attorney also raised several requirements, namely, that the current specimens (three photocopies of a certificate issued to a person who completed the course) are unacceptable under Trademark Rule 2.56(b)(5) because they are not examples of use of the mark by parties authorized by the certifier and because applicant's name appears thereon only as the issuer of the training certificate, (i.e., that applicant itself "certifies" only that a person has passed an examination administered by applicant); and that these specimens do not show certification services, but only use of the term for educational or training services. The Examining Attorney also required that applicant submit (1) a copy of the standards used to determine whether others may use the certification mark under Trademark Rule 2.61(b) and TMEP §1306.06(g)(ii) (Third Edition 2002);[4] and (2) a statement

_____

[3] Specifically, the Examining Attorney argued that the term "'software manager' is commonly used to aptly identify a particular job position by third parties. ... The addition of the generic term 'certified,' for certification services, does not create a registrable term." The Board interprets this refusal as one of genericness of the mark as a whole.

[4] Although the Examining Attorney did not specifically repeat this requirement (perhaps because applicant had offered to amend the identification from a certification mark to one for educational services), the Board's review of the record reveals that applicant has never submitted "a copy of the standards that

6

that applicant is not engaged in the production or marketing of the services in relation to which the mark is used pursuant to Section 4 of the Trademark Act, Trademark Rule 2.45 and TMEP §1306.06(g)(v) (Third Edition 2002).

In response, applicant submitted a declaration stating that it will not engage in the production or marketing of the services to which this mark is applied as a certification mark. Applicant argued that the specimens are certificates presented to those who complete applicant's certification program and that these persons then use the certificates as indicia of certification; that the USPTO issues registrations for certification marks which are routinely used to indicate that individuals have passed examinations administered by the certifier; and that the mark functions as a certification mark and is capable of identifying applicant's certification services. Applicant submitted printouts from the USPTO's Trademark Text and Image Database of 16 registered certification marks. These third-party registrations (some of which have been cancelled under Section 8 or have expired under

---

determine whether others may use the certification mark on their goods and/or in connection with their services" which is required by Trademark Rule 2.45(a) and (b). Thus, if applicant ultimately prevails, the application must be remanded to the Examining Attorney for appropriate action regarding this requirement (in addition to the need for an amended certification statement discussed, infra).

7

Section 9 of the Trademark Act) include registrations which issued on the Principal Register, on the Principal Register under Section 2(f) and on the Supplemental Register (almost all of which include disclaimers of some of the words comprising the mark). See, for example, CERTIFIED REGISTERED NURSE HOSPICE (Supplemental Register--expired under Section 9), CERTIFIED IMAGO THERAPIST (Principal Register, with the words "certified" and "therapist" disclaimed), CERTIFIED FIRST ASSISTANT (Principal Register under Section 2(f)), NATIONAL CERTIFIED MASTER GROOMER (Supplemental Register, with the words "certified master groomer" disclaimed).

Applicant stated that if the Examining Attorney "remains of the opinion that there is some problem with the applicant administering an examination to determine certification, then it is requested that this application be converted from a certification mark application to a service mark application, and that it be amended to cover 'providing educational and training services in the field of software asset and licensing management.'"

In responding to applicant's papers, the Examining Attorney then sent an October 5, 2000 Office action stating that the refusal to register "on grounds that [the designation] does not function as a certification mark is

8

maintained," but explaining that the application could be amended to seek registration of the mark for services in International Class 41.  The Examining Attorney specifically explained that applicant's proposed identification was indefinite and he suggested, if appropriate, "educational services namely offering seminars and courses in the field of software licensing and management."  He required substitute specimens because the specimens of record were unacceptable as evidence of actual service mark use because the phrase CERTIFIED SOFTWARE MANAGER is used thereon only to identify a title or degree as opposed to a course of study or training course; and that the references to certification mark requirements should be deleted from the application.  The Examining Attorney explained that compliance with these requirements would place the application in condition for issuance on the Supplemental Register.

In response thereto applicant, on April 5, 2001, submitted a photocopy of the Board's September 8, 1999 decision in another of applicant's related applications, Serial No. 74/528,311, to register the mark CSM as a certification mark for "software asset and licensing management."  Applicant's specimens in this second related application -- decals and blank certificates which had not

9

yet been used by a third party authorized by applicant --

had been rejected by the Examining Attorney because the

certificate was not filled in with an individual's name,

but the Board reversed the Examining Attorney, finding that

the specimens were acceptable under the Trademark Act and

the Trademark Rules of Practice.[5]  Applicant requested based

thereon that "the Examining Attorney accept the same

specimens in the present application, and approve this mark

as a certification mark [on the Supplemental Register]."

On October 4, 2001 the Examining Attorney issued a

final refusal to register on the Supplemental Register as a

certification mark, explaining that the September 8, 1999

Board decision in applicant's related application for the

mark CSM dealt with whether the specimens were unacceptable

solely because the name on the certificate had not been

filled in, whereas in this application the Examining

Attorney has never questioned whether the specimen

certificates (which do have a name filled in) could

demonstrate certification services, but rather, the

Examining Attorney finds the specimens do not show use of

CERTIFIED SOFTWARE MANAGER as a certification mark, but

---

[5] The certificate specimen submitted in applicant's second related application Serial No. 74/528,311 and all the specimens submitted herein are photocopies of the same certificate, except an individual's name has been inserted on those submitted in this application.

instead it is used only to identify a title or degree on the certificate, and registration was refused under Sections 4 and 45 of the Trademark Act.[6]

Applicant filed a request for reconsideration and a notice of appeal.  In the request for reconsideration applicant argues that the Examining Attorney never addressed whether the decal was an acceptable specimen evidencing use of CERTIFIED SOFTWARE MANAGER as a certification mark; that the amendment to allege use refers to use of the mark on "decals" and a decal was submitted with applicant's amendment to allege use.[7]  The Examining Attorney denied the request for reconsideration explaining that the only specimens of record in this application are the three photocopies of a certificate; that no decals have been properly made of record as specimens in this case (i.e., submission of a decal along with an affidavit or declaration supporting the use thereof); and that applicant's use of the words CERTIFIED SOFTWARE MANAGER on either the certificate or the decal conveys only the

---

[6] While the Examining Attorney did not specifically withdraw the genericness refusal, the Board must treat it as withdrawn as he did not further assert that refusal or argue with regard thereto.
[7] Applicant included with its request for reconsideration a photocopy of what applicant identifies as a decal.

commercial impression of a title or degree and thus, does not function as a certification mark.[8]

Both applicant and the Examining Attorney have filed briefs on the case. Applicant did not request an oral hearing.

Applicant essentially contends that the specimens of record support issuance of the mark CERTIFIED SOFTWARE MANAGER as a certification mark on the Supplemental Register. Specifically, applicant argues that the present specimen, a certificate displayed by those certified by applicant, is not merely an indication of a title or degree, but rather serves as an acceptable specimen showing use of the mark as a certification mark; that there is no wording on the specimen stating it is a title or degree; that there is no per se rule that a certificate cannot serve as a specimen to support use of a mark as a certification mark; and that applicant is not awarding a title or a degree, but is certifying a person's ability to perform software asset and licensing management.

The Examining Attorney essentially contends that the term CERTIFIED SOFTWARE MANAGER, as used on the specimen of

---

[8] The Examining Attorney distinguishes this use from applicant's use of the designation "CSM" as a certification mark appearing on the specimen herein.

record, is not used as a certification mark, but only identifies a title or degree conferred, and thus the applied-for mark fails to function as a certification mark, and is not registrable as a mark under Sections 4 and 45 of the Trademark Act.  Specifically, the Examining Attorney contends that a term may not be registered as a certification mark if the proposed mark merely designates a title or degree because such use does not certify anything; that the specimens of record are the primary means by which the commercial significance of the term sought to be registered is projected to the purchasing public--either as a certification mark or in some non-registrable function, such as identifying a title or degree; that in this application the specimens are three photocopies of a certificate filled out in an individual's name, and there are no other specimens of record herein, including any decals, which could be considered additional or substitute specimens[9]; that the Examining Attorney does not disagree that certificates (and decals) could be acceptable

---

[9] The Examining Attorney contends that even if the Board considered the photocopy submitted by applicant on April 4, 2002 and identified by applicant as a decal as properly in the record, the decal consists of simply the words CERTIFIED SOFTWARE MANAGER (each word over the next word) and all three stacked words appearing to the left of applicant's CSM and head design logo, and it would likewise be perceived by viewers as only indicating that the bearer thereof is the holder of the title CERTIFIED SOFTWARE MANAGER.

specimens of use for a certification mark, but here the primary issue has always been whether these particular specimen certificates show use of the words CERTIFIED SOFTWARE MANAGER as a certification mark or whether those words only identify a title or degree held by the bearer of the certificate; and that applicant's use of the letters CSM is completely different from applicant's use of CERTIFIED SOFTWARE MANAGER on the certificate specimens of record in this application, in that the letters CSM are not directly associated with the name of the individual holder of the certificate, are part of applicant's human head design logo, and are presented near the bottom corner of the certificate, as compared to applicant's use of CERTIFIED SOFTWARE MANAGER prominently displayed in the center of the certificate as the title or degree being conferred on the named bearer of the certificate, with no other meaning or use appearing thereon.

"Certification mark" is defined in Section 45 of the Trademark Act, 15 U.S.C. §1127, as follows:

> The term "certification mark" means, any word, name, symbol, or device, or any combination thereof--
>
> > (1) used by a person other than its owner, or
> >
> > (2) which its owner has a bona fide intention to permit a person

> other than the owner to use in
> commerce and files an application
> to register on the principal
> register established by this Act,

to certify regional or other origin,
material, mode of manufacture, quality,
accuracy, or other characteristics of
such person's goods or services or that
the work or labor on the goods or
services was performed by members of a
union or other organization.

As explained in the TMEP §1306.03 (Third Edition

2002):

> A certification mark may be used to
> certify that the work or labor on the
> goods or services was performed by a
> member of a union or other
> organization, or by a person who meets
> certain standards and tests of
> competency set by the certifier. 15
> U.S.C. §1127.  The certifier does not
> certify the quality of the work being
> performed, but only that the work was
> performed by a member of the union or
> group, or by someone who meets certain
> standards. (Case citations omitted.)
> Used in this manner, the mark certifies
> a characteristic of the goods or
> services.  Whether or not specific
> matter functions as a certification
> mark depends on whether the matter is
> used in connection with the goods or
> services in such a manner that the
> purchasing public will recognize it,
> either consciously or unconsciously, as
> a certification mark.

> Occasionally it is not clear whether a
> term is being used to certify that work
> or labor relating to the goods or
> services was performed by someone
> meeting certain standards or by members
> of a union or other organization to

indicate membership or whether the term is merely being used as a title or degree of the performer to indicate professional qualifications.  Matter that might appear to be simply a title or degree may function as a certification mark if used in the proper manner.  (Case citations omitted.)

Professor J. Thomas McCarthy explains proper use of a certification mark at 3 J. Thomas McCarthy, <u>McCarthy on Trademarks and Unfair Competition</u>, §19:93 (4th ed. 2001) as follows (footnotes omitted):

For a symbol to be registrable as a certification mark, that symbol must, by its nature and use, function such that buyers are likely to recognize the symbol as a symbol of guarantee or certification.  For example, a designation indicating that a merchant is the recipient of a title or degree must be used in such a way as to indicate certification.  But the use of such a designation in a way that would not normally be perceived by consumers as a certification mark will not be registrable. ... The rationale of the Patent and Trademark Office is that titles and degrees (such as Professor, Professional Engineer, Certified Dietician, JD, CPA, and MD) are not used to certify goods and services when used only to convey "personal information about the individual and certify some characteristic only about the individual's achievement" rather than certifying the characteristics of services rendered by that individual.

A certification mark for goods must be used in a manner analogous to that required for trademarks, namely on the

16

> goods or their containers or on
> displays associated therewith.
> Similarly, a certification mark for
> services must be used in a manner
> analogous to that of a service mark,
> namely in the sale or advertising of
> the services rendered.[10]

The record before us in this case indicates, and the Examining Attorney does not dispute, that applicant is engaged in certifying that persons who use the designation "CERTIFIED SOFTWARE MANAGER" in connection with software asset and licensing management have successfully passed applicant's examination thereon. (As noted earlier in this decision, applicant did not submit a copy of its standards as required by Trademark Rule 2.45. Thus, we cannot state that the record indicates that persons using the designation CERTIFIED SOFTWARE MANAGER have successfully met any standards of experience, skill, training or competency.)

However, the question of whether a designation serves as a mark, or a particular kind of mark, must be determined on the basis of the manner and context in which the designation is used, as revealed by the specimens and other

---

[10] See also, Professor McCarthy's "Comment on certification marks" at 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, §19:96 (4th ed. 2001); and In re University of Mississippi, 1 USPQ2d 1909 (TTAB 1987). See generally, Terry E. Holtzman, "Tips From the Trademark Examining Operation – Certification Marks: An Overview," 81 Trademark Rep. 180 (1991).

literature of record, and the significance which the designation is likely to have to members of the relevant public because of the manner in which it is used. In order for an applicant to obtain registration of a certification mark it should be clear from the record that the circumstances surrounding the use and promotion of the mark will give certification significance to the mark in the marketplace. See In re National Association of Legal Secretaries (International), 221 USPQ 50 (TTAB 1983). That is, when an applicant seeks registration of a certification mark, it is the use by persons other than the owner of the mark, subject to the owner's control, which is the primary consideration in determining prospective purchasers' perceptions.

In the application now before the Board, the only information indicating use of the designation CERTIFIED SOFTWARE MANAGER is the certificate specimen reproduced earlier herein.[11] Thus, the question of whether "CERTIFIED SOFTWARE MANAGER" functions as a title or degree or whether it functions as applicant's certification mark for software

---

[11] We agree with the Examining Attorney that the photocopy of a decal submitted without a supporting affidavit or declaration as required by Trademark Rule 2.59 is not properly of record in this application. Even if the decal had been properly made of record, the use of the designation CERTIFIED SOFTWARE MANAGER thereon is that of a title or degree of the bearer thereof and not a certification of the involved services.

18

asset and licensing management services must be determined from the context in which it is used as revealed by the specimen of record, and if the specimen establishes that the designation will be perceived by purchasers or potential purchasers of the software asset and licensing management services as a certification mark, or as simply a title or degree conferred on the individual whose name appears on the certificate. The statement in the certificate specimen reads: "This certificate is awarded to _____ for successfully completing the requirements to become a Certified Software Manager  Date   Signature Line."

The Examining Attorney put into the record, inter alia, the dictionary definition of "certify" ("certified") which shows how the term "certified" could be understood by the purchasing public, and based on applicant's use, that term would be perceived as applicant simply issuing a certificate to the bearer for completion of the course. Also, the Examining Attorney's submission of numerous excerpted stories retrieved from the Nexis database shows that "software manager" refers to someone who manages the use of software for a company or business, and would be so understood by the purchasing public.

The language on applicant's specimen and the context thereof merely indicates that the holder has been awarded the title or degree of "Certified Software Manager," and is not likely to be perceived by the relevant purchasers as a certification mark. See In re National Association of Purchasing Management, 228 USPQ 768 (TTAB 1986) (Board held acronym "C.P.M.," which stands for "certified purchasing manager," as used by persons other than the owner (applicant) subject to the owner's control, and directed to prospective recipients of the authorized users' services, the only use of which in the case consisted of business cards of two purchasing managers, does not constitute use as a certification mark, but rather functions solely as a title or degree); In re National Association of Legal Secretaries (International), supra (Board held (i) the designation "PROFESSIONAL LEGAL SECRETARY," as used on applicant's specimens, business-card-size certificates, does not constitute use as a certification mark, but rather merely identifies a title awarded to the cardholder, and (ii) the designation is merely descriptive of persons having the ability to perform as a professional legal secretary to which applicant stated it certified); In re Institute of Certified Professional Business Consultants, 216 USPQ 338 (TTAB 1982) (Board held "C P B C," as used on

20

applicant's specimens, the business cards of an authorized individual, does not constitute use as a certification mark, but rather merely identifies a title or degree earned by an individual); In re Professional Photographers of Ohio, Inc., 149 USPQ 857 (TTAB 1966) (Board held "CERTIFIED PROFESSIONAL PHOTOGRAPHER," as used on applicant's letterhead specimens, does not constitute use as a certification mark, but rather as one of a number of titles).[12]

Cf., In re National Institute for Automotive Service Excellence, 218 USPQ 744 (TTAB 1983) (Board held (i) a design mark consisting solely of two meshed gears was not a mutilation of the mark as used which included the words "NATIONAL INSTITUTE FOR AUTOMOTIVE SERVICE EXCELLENCE" and "CERTIFIED GENERAL MECHANIC," and (ii) use of the mark on cloth insignias to be worn by individuals certified by applicant, coupled with the record showing that in order to qualify a mechanic must meet certain standards as to

---

[12] For analogous cases on designations used as titles or degrees, but involving collective membership marks or service marks, see In re Thacker, 228 USPQ 961 (TTAB 1986); In re Mortgage Bankers Association of America, 226 USPQ 954 (TTAB 1985); American Speech-Language-Hearing Association v. National Hearing Aid Society, 224 USPQ 798 (TTAB 1984); In re International Institute of Valuers, 223 USPQ 350 (TTAB 1984); In re Institute for Certification of Computer Professionals, 219 USPQ 372 (TTAB 1983); In re Packaging Education Foundation, Inc., 184 USPQ 832 (TTAB 1974); and In re The National Society of Cardiopulmonary Technologists, Inc., 173 USPQ 511 (TTAB 1972).

experience and training, pass applicant's tests for each area of automotive mechanics, and to retain certification must retake and pass the tests every five years, established use as a certification mark.)

Regarding applicant's submission of 16 third-party registrations, we note, as explained earlier herein, that the crucial question in these types of cases is whether the mark is used in such a manner that it would be perceived by the relevant purchasing public as a certification mark or rather if the use reflects that it would be perceived as merely a title or degree held by the bearer thereof. Inasmuch as applicant did not submit the specimens or any other portion of the record from these third-party registrations, they are of very limited probative value in this case. Stated another way, there has been no showing that the registration of any of the 16 third-party registrations was inconsistent with the law and policy set forth herein regarding the registrability of certification marks. Presumably, the specimens and other information of record in each of those 16 registration files show valid certification mark use and not use solely as a title or degree.

In any event, the Board's task in an ex parte appeal is to determine, based on the record before us, whether

applicant's mark is used as and would be recognized by the purchasing public as a certification mark.  As often noted by the Board, each case must be decided on its own merits. We are not privy to the records of the third-party registration files, and moreover, the determination of registrability of those particular marks by the Trademark Examining Attorneys cannot control the merits in the case now before us.  See In re Nett Designs Inc., 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001) ("Even if some prior registrations had some characteristics similar to [applicant's application], the PTO's allowance of such prior registrations does not bind the Board or this court.")

Considering the overall evidence in this case, we agree with the Examining Attorney that the designation CERTIFIED SOFTWARE MANAGER, as a whole, is used as a title or degree and does not function as a certification mark.

**Decision:**  The refusal to register on the Supplemental Register under Sections 4 and 45 of the Trademark Act is affirmed.